704 P.2d 432

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John DOE, Defendant-Appellant.**

No. 7733.

Court of Appeals of New Mexico.

Nov. 6, 1984.

Certiorari Denied Dec. 7, 1984.

Paul Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Winston Roberts-Hohl, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

John Doe appeals from a judgment and sentence imposed after conviction of possession of a controlled substance (heroin) with intent to traffic, contrary to NMSA 1978, Section 30–31–20 (Repl.Pamp. 1980). Two issues are presented on appeal: (1) whether defendant's prosecution and conviction were barred by an agreement not to prosecute; and (2) whether the defendant's conviction for trafficking in heroin was supported by sufficient evidence. Other issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App.), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983).

## FACTS

On motion of defendant, portions of the record have been sealed herein. On the court's own motion, the name John Doe has been substituted for the name of defendant for the purposes of this appeal.

Defendant was arrested and charged with possession of heroin with intent to traffic, and possession of a controlled substance (dilaudid) in 1983 after the execution of a search warrant at the home of defendant.

Several police officers testified that they had defendant's residence under surveillance for several days preceding his arrest. The officers saw numerous vehicles arrive and depart during their surveillance. One officer described the activity as "a lot of traffic." He also testified that the occupants of the vehicles would remain at the residence for short periods of time, often less than two minutes.

The defendant gave two separate statements to law enforcement officers in which he admitted both using and selling heroin. Defendant gave his first statement two days after his arrest. He gave a second statement shortly thereafter and admitted selling heroin. Defendant also told the police he would "shoot a gram a day, sometimes more if he could get it." Defendant raises no claim that the statements were improperly admitted into evidence.

Several months after defendant gave his statements, he entered into a written agreement with the prosecutor. The agreement was negotiated at a meeting between defendant's attorney, police and the prosecutor. The agreement provided in part:

Defendant, [John Doe] has been charged with: (1) possession of a controlled substance with intent to traffic, to-wit: heroin; and (2) possession of a controlled substance, to-wit: dilaudid.

Pursuant to our conference [date omitted] Defendant is to aid the state in the search and seizure of controlled substances which may lead to the arrest of individuals in possession of said substances. These controlled substances must be in Schedule I or Schedule II controlled substances, § 30–31–6 and § 30–31–7 NMSA 1978, respectively. For Defendant's aid in the State's arrest of these individuals, for each three individuals [John Doe] assists the state in the search and seizure process leading to

the arrest of that individual, one charge of [John Doe] will be dismissed. It also is specifically understood that should [John Doe] have information leading to the arrest of person(s) involved in murders or a crime that rises to this gravity, the Defendant's charges will be dismissed entirely.

Upon the successful completion by the Defendant of the above, the State specifically agrees to recommend the Defendant receive ninety days in the [name of county omitted] Jail for dismissal of the charges or, in the alternative, the defendant entering a residential program of rehabilitation.

The prosecutor also added in handwriting the following addendum to the typewritten agreement:

[I]t is also understood and made part of this agreement that [John Doe] must complete this agreement no later than October 18[, 1983]. [A]nd that the defendant will not violate the law during the period of time covered by this agreement.

Defendant sought to prevent prosecution of the two charges against him by filing a motion to compel compliance with the agreement not to prosecute. Defendant requested an in camera hearing on the motion. Defendant also filed a motion to vacate his trial setting which was granted.

The trial court denied defendant's motion to compel the state to dismiss the charges against him without hearing testimony. It noted that it had previously found in the hearing on the motion to vacate the trial setting that defendant had not fulfilled his part of the agreement not to prosecute. Thereafter, the case was tried in 1984. The jury convicted defendant of trafficking in heroin and acquitted him of unlawful possession of dilaudid.

## I. AGREEMENT NOT TO PROSECUTE

Defendant contends the trial court erred in failing to vacate the trial setting and refusing to require the prosecutor to abide by the provisions of an agreement that if defendant informed on eight different persons relating to drug transactions the state would not prosecute him. At the hearing on defendant's motion to vacate, defendant testified that he had abided by the terms of the agreement by informing on eight persons and had supplied the quantity and quality of information sufficient to fulfill the terms of the agreement. However, he gave contradictory statements about what he felt was necessary for compliance. Defendant conceded that the information which he was to give under the terms of the agreement was intended to relate to controlled drug buys, drugs in the possession of others, drug dealing, or related information which would in fact "lead to an arrest."

The state argues that the defendant gave sufficient information to lead to an arrest, on only one person, in compliance with the terms of the agreement. The state contends that the information supplied by the defendant about the other persons was insufficient according to the agreement. The state claims that several of the individuals named by the defendant were arrested as a result of undercover agents purchasing controlled substances from these persons and that the arrests resulted from information received by the state from sources other than from the defendant.

The state contends that as a result of information supplied by defendant, police obtained search warrants to search two homes. As a result of the searches only one person was arrested and this was for a firearms violation, not a narcotics charge. An officer testified that the defendant had not told police of the presence of narcotics in anyone's house.

Defendant argues that the provisions of the agreement were ambiguous and that parol evidence was admissible to explain any ambiguity in the agreement. The state contends that the agreement was drafted by defendant's counsel and that any inherent ambiguity should be construed against the party drafting the agreement. *Spinoso v. Rio Rancho Estates, Inc.*, 96 N.M. 5,

626 P.2d 1307 (Ct.App.), *cert. denied,* 96 N.M. 17, 627 P.2d 412 (1981).

The trial court entered an order denying defendant's motion to compel compliance with the non-prosecution agreement. The trial court found in its order that:

> Further testimony on Defendant's Motion to Compel for Compliance with Plea Bargain Agreement and Request for In Camera Hearing is unnecessary as the Court has previously heard testimony [date omitted] on Defendant's Motion to Vacate and Request for In Camera Hearing. At that time, the Court determined there had not been compliance by the Defendant with the plea bargain agreement * * * *

Although the evidence was conflicting, there is evidence that supports the trial court's determination that defendant did not comply with the agreement and did not comply with the time deadline specified in the agreement.

■ Defendant argues that the agreement drafted by his attorney and sought to be enforced by him should, however, be construed and interpreted under contract law. Although upon initial consideration this approach might seem proper, we believe that upon a more careful analysis such an approach should be rejected. We adopt the rationale articulated in *United States ex rel. Selikoff v. Commissioner of Correction of New York,* 524 F.2d 650, 654 (2d Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976), where the court stated: "The defendant seeks to impose principles of contract upon the plea bargaining process. Such principles, borrowed from the commercial world, are inapposite to the ends of criminal justice."

■ Although both briefs characterize the agreement sought to be enforced by the defendant as a "plea bargain", this case involves neither a plea bargain nor a grant of immunity. Defendant did not plead guilty nor was any immunity approved by the trial court. *See* NMSA 1978, Crim.P.R. 58 (Repl.Pamp.1980); NMSA 1978, § 31–6–15 (Repl.Pamp.1984); *see also State v. Sanchez,* 98 N.M. 428, 649 P.2d 496 (Ct.App.), *cert. denied,* 98 N.M. 478, 649 P.2d 1391 (1982).

■ Agreements to dismiss charges pending prosecution are distinguished from plea bargains, since plea bargains involve a plea of guilty or nolo contendre. Although plea bargains are recognized by rule of court, NMSA 1978, Crim.P.Rule 21(g) (Repl.Pamp.1980), an agreement not to prosecute, unless made under a grant of immunity duly approved by a court, is not expressly sanctioned by court rule or statute.

■ New Mexico follows the rule that agreements not to prosecute may be enforced if they are duly consummated and comply with the requirements of due process. *Compare* however, *Hunter v. United States,* 405 F.2d 1187 (9th Cir.1969); *Application of Parham,* 6 Ariz.App. 191, 431 P.2d 86 (1967); *Bowie v. State,* 14 Md.App. 567, 287 A.2d 782 (1972). As noted in *People v. Marquez,* 644 P.2d 59, 62 (Colo.App.1981):

> Courts that have enforced non-prosecution agreements rely primarily upon the due process standards articulated in *Santobello v. New York* * * * [404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)]. See, e.g., *State ex rel. Plant v. Sceresse,* 84 N.M. 312, 502 P.2d 1002 (1972); *State v. Session,* 91 N.M. 381, 574 P.2d 600 (Ct.App.1978). Such decisions also draw upon general equitable principles. *See United States v. Lieber,* 473 F.Supp. 884 (E.D.N.Y.1979); *Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977).

In *State v. Session,* it was recognized that an agreement not to prosecute could be enforced by the court where giving effect to the agreement was "the only appropriate relief within the dictates of due process." 91 N.M. at 383, 574 P.2d at 602. (quoting *State ex rel. Plant v. Sceresse* ).

■ The proper procedure to be applied in determining whether an agreement not to prosecute has been complied with and should be enforced based upon a claim of denial of due process, is for the trial court to examine the totality of the circumstanc-

es and the exact agreement of the parties and ascertain whether a refusal to comply with the agreement would deny defendant due process of law. The court will then decide what relief, if any, is appropriate under the circumstances. *E.g., State v. Torres,* 81 N.M. 521, 469 P.2d 166 (Ct. App.), *cert. denied,* 81 N.M. 506, 469 P.2d 151 (1970); *State v. Greene,* 91 N.M. 207, 572 P.2d 935 (1977).

In the present case, a plain reading of the agreement drafted by defendant's counsel and approved by the prosecutor supports the trial court's finding that the agreement was not fully performed and hence was unenforceable. Although defendant sought to present additional testimony concerning the agreement not to prosecute, which was denied by the trial court, defendant did not make an offer of proof indicating what the proposed additional evidence would be. NMSA 1978, Evid.R. 103(a)(2) (Repl.Pamp.1983); *see also State v. Carrillo,* 88 N.M. 236, 539 P.2d 626 (Ct.App.1975). Moreover, defendant's motion to compel compliance with the plea bargain did not alert the court to the necessity for an evidentiary hearing on the motion as required by NMSA 1978, Crim.P. Rule 33(e) (Cum.Supp.1984). Under these circumstances, the trial court's refusal to enforce the agreement not to prosecute is supported by the evidence.

## II. SUFFICIENCY OF EVIDENCE

Defendant contends that the evidence in this case was not sufficient to support his conviction of possession of a controlled substance, heroin, with intent to distribute. In reviewing a challenge of the sufficiency of evidence in a criminal case on appeal, the evidence must be viewed in a light most favorable to the verdict below, resolving all conflicts and indulging in all permissible inferences in favor of the verdict. *State v. Hutchinson,* 99 N.M. 616, 661 P.2d 1315 (1983). The test used to evaluate this evidence is whether there was sufficient evidence to permit a rational jury to find every element of the crime beyond a rea-

sonable doubt. *State v. Tovar,* 98 N.M. 655, 651 P.2d 1299 (1982).

Possession and knowledge that an object is a narcotic drug can be proven circumstantially. *State v. Baca,* 87 N.M. 12, 528 P.2d 656 (Ct.App.), *cert. denied,* 87 N.M. 5, 528 P.2d 649 (1974). A defendant may be found to be in constructive possession of a controlled substance where he is shown to have knowledge of the presence of the controlled substance and has control over it. *State v. Herrera,* 90 N.M. 306, 563 P.2d 100 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977).

At the time of execution of the search warrant upon defendant's residence, police found heroin in several places in the home. A spoon, a tin foil packet, and a syringe, all containing heroin, were found on the kitchen table near defendant. The defendant was also near a sizeable collection of dealer's equipment in the kitchen including a measuring spoon and cotton from the kitchen cabinet which contained heroin residue. Additionally, a plastic container with six grams of 4% heroin was found in the bathroom sink.

A law enforcement officer testified that the six grams of 4% heroin was enough to make between 48 and 192 street-sale packets with a street value of between $1,200 and $4,800. The same officer testified that when police announced their presence outside the residence and that they had a search warrant, the officers heard scuffling and movement inside the house. Defendant admitted twice to police following his arrest that he had been dealing heroin. No objection was made to the officer's testimony concerning these admissions. An officer also testified that during the time defendant's home had been under surveillance, police saw numerous individuals arrive and depart from the residence. Defendant's admissions, his presence near the drug equipment and the evidence of heavy traffic to and from his home were sufficient to support the inference that defendant constructively possessed heroin and was trafficking in a controlled substance. *See State v. Quintana,* 87 N.M. 414, 534

P.2d 1126 (Ct.App.), *cert. denied,* 88 N.M. 29, 536 P.2d 1085, *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

The evidence was sufficient to sustain the conviction of trafficking.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

NEAL and BIVINS, JJ., concur.