752 P.2d 1101
**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Richard LARSON, Defendant–Appellant.**

**No. 9961.**

Court of Appeals of New Mexico.

March 3, 1988.

Certiorari Denied April 5, 1988.

Hal Stratton, Atty. Gen., Patricia A. Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Kenneth B. Wilson, Wilson & Martin, Roswell, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals his conviction for multiple counts of criminal sexual offenses involving his daughter and another child. His brief raises five issues. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Gattis,* 105 N.M. 194, 730 P.2d 497 (Ct.App. 1986). We discuss: (1) whether the information should have been dismissed because the state and defendant had an agreement whereby defendant would not be prosecuted if he fulfilled certain conditions; (2) whether the trial court erred in allowing a videotaped deposition into evidence or in not dismissing the prosecution for violation of the six-month rule; and (3) whether the trial court erred by admitting certain alleged pornographic materials into evidence. Defendant also raises an issue concerning cumulative error, but because we find no error there can be no cumulative error. *State v. Shafer,* 102 N.M. 629, 698 P.2d 902 (Ct.App.1985). We affirm.

*The Agreement Not To Prosecute*

After the facts which formed the basis of the prosecution first came to light in February 1986, the state filed a complaint against defendant in magistrate court. However, at the time of the preliminary hearing, defendant's daughter, under thirteen years old, was unable to testify. Thereafter, in March 1986, defendant and the state entered into an agreement whereby the state promised not to prosecute if defendant would cooperate with the Department of Human Services and "not contact, communicate with, or approach" and not "make unsupervised contacts, directly or indirectly," with his daughter.

Defendant's daughter moved to Texas to live with relatives for the rest of the school year and defendant remained in the family home. In June 1986, the daughter moved back to New Mexico and defendant and his oldest son moved out of the home, but remained nearby. In late June, the state refiled the charges that were dropped in March.

Defendant contends that he did not breach his part of the agreement and, therefore, the state was bound to honor its part. Agreements of this nature are governed by due process principles. *State v. Doe,* 103 N.M. 178, 704 P.2d 432 (Ct.App. 1984). Whether or not a defendant has failed to comply with the terms of an agreement made by the state not to prosecute, must be determined by the totality of the circumstances. *State v. Doe; see also State v. Trammel,* 100 N.M. 543, 673 P.2d 827 (Ct.App.1983). However, the question

of whether a party has complied with his part of the agreement is a factual question governed by substantial evidence principles. *See id.* When the evidence is conflicting, the trial court's determination of defendant's noncompliance will be upheld if it is supported by substantial evidence. *Id.*

Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 692 P.2d 1315 (1984). When reviewing for substantial evidence, this court views the evidence in the light most favorable to the party prevailing below and it resolves all conflicts and indulges in all permissible inferences in favor of the decision. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). Hence, the question here is whether, when viewing the evidence before the trial court in its most favorable light, there was evidence that defendant breached the agreement.

■ We are satisfied that substantial evidence was presented to support the trial court's ruling that defendant failed to comply with the bargain which lead to the state's prior dismissal of charges against him. At that hearing, defendant's wife testified that defendant had requested on numerous occasions, both orally and in writing, that she persuade the daughter to allow defendant to move back into the house. Although less persuasive, there was also evidence that the son, who was living with defendant, confronted the daughter and told her that it was her fault that he and his father were banished from the family home. Finally, defendant's wife testified that defendant would drive up and down the street hoping to see the daughter, which caused the daughter to feel she had to stay in the house in order to avoid defendant. Eventually, the situation became so bad that defendant's wife complained to the district attorney about defendant's behavior. The foregoing is evidence that defendant attempted to and did have contact, both directly and indirectly, with his daughter in breach of the agreement.

The record shows that defendant was not charged again with the sexual offenses until he was arrested in late June 1986 for damaging a vehicle owned by a gentleman friend of his wife. This friend was visiting defendant's wife that evening and defendant and his son repeatedly drove by the house. Defendant telephoned asking to speak to the friend, but was refused access. Later, there was a hard banging at wife's door. Defendant testified that he had sent his son to pick up something. Defendant's wife testified that the banging appeared increasingly insistent and she had never known her son to behave that way. After the person at the door was denied entrance, defendant went to the friend's house and damaged his vehicle. Defendant was subsequently arrested for the offenses arising out of the damage to the vehicle.

Defendant contends that he was charged again with the sexual offenses because of the incident involving the vehicle and his wife's friend. Hence, he argues that the incident did not consist of a breach of the agreement. We disagree that the only interpretation of the evidence before the trial court was that defendant was charged because of the incident involving his wife's friend. The evidence would have allowed the trial court to infer either that defendant was charged again because of this incident or that defendant was charged again because of his behavior in contacting and approaching his daughter. It was for the trial court to decide which inference was more reasonable. *See State v. Lankford.* Accordingly, we cannot say that the trial court's decision that defendant breached the agreement was unsupported by substantial evidence. *See State v. Doe.*

Implicit in the promise sought to be enforced by defendant was his agreement that defendant would abide by the terms of the agreement and that he would not commit any additional criminal offenses during the period of the agreement. *See* NMSA 1978, § 31–16A–2; *see also People v. Gossage,* 128 Ill.App.3d 188, 83 Ill.Dec. 422, 470 N.E.2d 548 (1984). Defendant was charged

and convicted of burglary of an automobile owned by Charles Van Dien, contrary to NMSA 1978, Section 30–16–3; larceny of a firearm, contrary to Section 30–16–1; and criminal damage to property in an amount less than $1,000, contrary to Section 30–15–1. *See State v. Larson*, Ct.App. No. 10, 144 (Filed January 14, 1988).

### The Videotape and Six–Month Rule

When defendant was recharged with the sexual crimes on June 30, 1986, the state filed a complaint in district court which was assigned cause number 86–183. Pursuant to NMSA 1978, Section 30–9–17 (Repl. Pamp.1984) and SCRA 1986, 5–504, the state moved and was granted permission to take a videotaped deposition of defendant's daughter. The state also moved to hold the videotape procedure simultaneously with the preliminary hearing. Instead, the videotape was made before the preliminary hearing and was used at the preliminary hearing. Following the preliminary hearing, defendant was bound over for trial and a criminal information was filed in district court on September 9, 1986. The information was assigned cause number 86–223.

Defendant filed a written motion in limine to exclude the videotaped deposition from evidence at his trial. Defendant then changed counsel. In arguing the motion, new counsel stressed that as the case progressed new issues were raised in response to new investigation. Accordingly, defendant wanted a new videotaped deposition or the right to call defendant's daughter as his own witness at trial to question her about the matters alleged to have been newly raised. The trial court, sympathetic to defendant's predicament, was concerned that taking the videotaped deposition so early would arrest the development of the case. However, it ruled that defendant had not yet made a specific showing of how the earlier cross-examination had been inadequate. Thus, the motion was denied but trial court determined that defendant could renew it if he could make the required showing.

At a later motion hearing, defendant again raised the issue of requiring another chance to confront the witness. Defense counsel and the state's counsel argued over whether defendant had made the required showing to justify a new videotaped deposition, but that the deposition would take place at the time of trial so defendant would not be able to complain that still other matters had come to his attention necessitating yet another chance at confrontation.

At trial, in February 1987, both the first videotaped deposition and the second deposition conducted at the time of trial were introduced into evidence. At the second videotaped deposition, defense counsel asked questions of daughter such as, "what do you remember about your testimony at the earlier videotaped deposition?" The witness answered that she did not remember very much because she had been trying to forget about the incidents.

At trial, defendant moved for a mistrial because the court allowed the first videotaped deposition into evidence. Defendant based his argument on the fact that the first videotaped deposition was taken following proceedings on the preliminary complaint in cause no. 86–183, and not during the later proceedings for which he was being tried in cause no. 86–223. Thus, he argued that the provisions of the rule allowing videotaped depositions, Rule 5–504, were not followed. Alternatively, he contended that if the videotaped deposition was permissibly taken in cause no. 86–183, the six-month rule had run on that cause inasmuch as it was filed on June 30, 1986, and the trial was being held in February 1987.

On appeal, defendant raises a number of arguments arising out of the above facts. We find all to be without merit.

■ Defendant contends that, because the video deposition was taken prior to the filing of the information upon which he ultimately went to trial, Rule 5–504 was violated. Defendant bases this argument on his view that the "logical and apparent reason for the rules to provide that the

video deposition must be taken after the filing of the information, in order to be used at the trial, is to prohibit stale testimony from being used as the basis of conviction."

There is nothing in Rule 5–504 requiring the deposition to be taken pursuant to the charging paper upon which defendant .is ultimately tried. Section 30–9–17(A) allows the taking of depositions in "any prosecution." A "prosecution" is commenced with the filing of an indictment, information or complaint. SCRA 1986, 5–201. Consistent with Rule 5–201(A), Rule 5–504 allows the taking of the deposition after the filing of the indictment, information or complaint. Indeed, because a defendant may not be tried for a felony on a complaint, N.M. Const. art. II, § 14 (Cum.Supp.1987), the framers of the rule must have intended there would be occasions when the deposition would be taken pursuant to a complaint and then introduced at a trial on an indictment or information.

Hence, rather than prohibiting stale testimony, we believe that the requirement of the information, indictment or complaint is simply to grant the district court jurisdiction to make the determinations required to be made and to order the taking of the deposition. *See Sanchez v. Attorney General*, 93 N.M. 210, 598 P.2d 1170 (Ct.App. 1979). In this case, there was a complaint which gave the district court jurisdiction to order the taking of the deposition. Defendant raises no issue concerning the necessity for the deposition, *see State v. Vigil*, 103 N.M. 583, 711 P.2d 28 (Ct.App.1985), or the conditions of the deposition, *see State v. Tafoya*, 105 N.M. 117, 729 P.2d 1371 (Ct. App.1986).

■ Defendant next contends that, if the deposition was taken in cause no. 86–183, his trial violated the six-month rule. *See* SCRA 1986, 5–604. Defendant relies on the filing date of the complaint in cause no. 86–183. However, Rule 5–604 provides that the time at which the six-month rule starts to run begins with the latest of several events. None of them is the filing of the charging papers. The only date applicable in this case is the date of defendant's arraignment on September 22, 1986. Accordingly, his trial the following February was timely.

■ Finally, defendant vaguely contends that his right to confrontation was violated by the deposition because he had not fully investigated the case at the time of the first videotape and the victim had forgotten everything by the time of the second videotape. While it appears to us that the procedure outlined in Section 30–9–17 and Rule 5–504 contemplates only one deposition at which defense counsel should be on notice that this is his chance to confront the victim, we need not decide in this case when or in what circumstances rigid adherence to the construction of the statute and rule would deny a defendant his right to confrontation.

In this case, defendant never specifically informed the court of what his further investigation had revealed. He did mention a psychological report, but it appears the report was available at the time of the deposition. No other specific items were alleged. Nonetheless, the trial court allowed the second deposition. As the court noted, defendant's questions at this deposition were not designed to elicit specific information about matters that came to defendant's attention after the taking of the first deposition. Rather, the questions were directed to the victim's memory of the first deposition. Under these circumstances, where defendant never alerted the trial court why a new video deposition was necessary and where he never specifically informs this court, with references to the record, why a new video deposition was necessary, there is no factual basis for defendant's contention and we cannot say that the court erred in allowing the first videotaped deposition into evidence.

*The Alleged Pornographic Materials*

■ Defendant complains of the introduction into evidence of two types of alleged pornographic material. First, the tri-

al court admitted a paperback entitled *Family Affairs,* which contained fictional accounts of sexual practices between members of the same family. This item was located in defendant's home long after the time of the crimes for which he was convicted. Second, the trial court admitted a "Playgirl" magazine, containing pictures of nude males, discovered in defendant's wife's bedroom. Defendant's daughter had testified that defendant had shown her pictures of nude males standing near a pickup truck, but none of the pictures in the "Playgirl" magazine matched this description.

Defendant contends these items of evidence were irrelevant and, even if they were relevant, their capacity for prejudice outweighed any legitimate probative value. We disagree.

Relevancy is not an inherent characteristic of evidence but exists only as a relation between the evidence and a matter properly provable in the case. *State v. Martin,* 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977). The question is whether the item of evidence tends to prove the matter sought to be proved. The answer is based on logic and experience and the standard of probability is more probable than not. *Id.* In this case, the state was required to prove that defendant intentionally committed the sexual crimes.

In *State v. Dobbs,* 100 N.M. 60, 665 P.2d 1151 (Ct.App.1983), in a prosecution for sex offenses, this court upheld the admission of a vibrator device found in defendant's house although the vibrator was not alleged to have been used to perpetrate the sexual offenses. We said that the possession of the vibrator made it more probable than not that defendant did what the girls said he did and, therefore, was relevant to show his intent. Our statements in *Dobbs* were statements of logic based on experience. For the same reasons given in *Dobbs,* we deem the paperback *Family Affairs* was relevant to establish defendant's intent here. The fact that defendant possessed written materials containing fantasies and stories about intrafamilial sex

made it more likely than not that defendant did what his daughter said he did. *See id.*

Regarding the "Playgirl" magazine, we also hold that it was relevant. The fact that real evidence is merely corroborative or illustrative does not destroy its relevance. *State v. Upton,* 60 N.M. 205, 290 P.2d 440 (1955). In this case, the pictures in the magazine were similar to the ones daughter said defendant showed her. Under *Upton,* they were reasonably relevant.

Defendant also contends that whatever relevance the materials may have had was outweighed by their capacity for prejudice. *See* SCRA 1986, 11–403. When the trial court has balanced the probative value against the capacity to prejudice according to Rule 11–403, the appellate issue is whether the trial court has abused its discretion. *State v. Carr,* 95 N.M. 755, 626 P.2d 292 (Ct.App.), *cert. denied,* 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981). In this case, the trial court carefully balanced probative value against capacity to prejudice and admitted the evidence on conditions that were quite favorable to defendant. The trial court realized that the jury could get overly involved in reading the book and looking at the pictures in the magazine, thus leading to a likelihood of undue prejudice. Therefore, it allowed the items to be admitted into evidence and described to the jury but the items were not shown to the jury. Accordingly, we believe the trial court made every effort to avoid any likelihood of prejudice. We cannot say that this was an abuse of discretion. *See State v. Carr.*

Conclusion

Finding no error, the defendant's convictions and sentences are affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., and GARCIA, J., concur.