This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37436**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**MARGARET E. JOHNSON,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl Francolini, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**B. Zamora, Judge.**

**{1}** The State appealed following dismissal of the underlying case. It contends the district court erred in determining that Defendant fulfilled her obligations under the terms of a non-prosecution agreement. We affirm.

## BACKGROUND

**{2}** Defendant was arrested in July 2015, when a search of her vehicle resulted in the seizure of a significant quantity of methamphetamine. In the course of the ensuing interrogation two agents made an agreement with Defendant that she would not face charges if she assisted law enforcement. In reliance upon that agreement Defendant provided the names of approximately seventeen individuals, as well as other information about an interstate drug trafficking operation with which she was involved.

**{3}** The State later concluded that the information was insufficient because Defendant had failed to do more to work on the cases with law enforcement, and charged her with trafficking. In response, Defendant filed a motion to dismiss, contending that the State had promised not to prosecute her if she provided information, and that she had complied. In its response, the State contended that Defendant had failed to fulfill her obligations.

**{4}** The district court conducted a hearing on Defendant's motion, in the course of which it received evidence and heard arguments. The district court ultimately determined that law enforcement agents had promised Defendant that she would not face charges based on the methamphetamine found in her vehicle on July 9, 2015, if she provided names and information on other individuals associated with drug trafficking. The district court further found that Defendant had complied with the terms of that agreement. Accordingly, the court dismissed the criminal information with prejudice. This appeal followed.

## STANDARD OF REVIEW

**{5}** We review the district court's findings for substantial evidence. *See, e.g.*, *State v. Larson*, 1988-NMCA-019, ¶ 4, 107 N.M. 85, 752 P.2d 1101 (reviewing findings concerning compliance with a non-prosecution agreement for substantial evidence); *State v. Seward*, 1986-NMCA-062, ¶ 29, 104 N.M. 548, 724 P.2d 756 (reviewing the district court's assessment of the terms of a non-prosecution agreement for substantial evidence); *State v. Session*, 1978-NMCA-005, ¶¶ 4-10, 12-14, 91 N.M. 381, 574 P.2d 600 (reviewing the district court's findings, concerning the terms of a non-prosecution agreement and compliance, for substantial evidence).

## DISCUSSION

**{6}** The parties agree that a non-prosecution agreement was entered, and that its enforceability is governed by principles of due process. *See State v. Doe*, 1984-NMCA-114, ¶¶ 17-19, 103 N.M. 178, 704 P.2d 432 (observing that "agreements not to prosecute may be enforced if they are duly consummated and comply with the requirements of due process," notwithstanding the absence of court rule or statute expressly sanctioning such agreements). *See generally Larson*, 1988-NMCA-019, ¶ 4 ("Agreements of this nature are governed by due process principles."); *Session*, 1978-NMCA-005, ¶¶ 3, 8-11 (holding, as a matter of due process, that the district court had authority to enforce a police officer's promise not to prosecute in exchange for the defendant's agreement to testify against other individuals, notwithstanding the officer's

lack of authority to enter the agreement). *But see State v. King*, 2015-NMSC-030, ¶ 11, 357 P.3d 949 ("[T]he police have no authority to make prosecutorial decisions." (internal quotation marks and citation omitted)).

**{7}** When the enforcement of a non-prosecution agreement is at issue, the court must examine the exact agreement of the parties, together with the totality of the circumstances, to determine whether there has been compliance, and whether failure to enforce the agreement would deny the defendant due process of law. *See Doe*, 1984-NMCA-114, ¶ 19 ("The proper procedure to be applied in determining whether an agreement not to prosecute has been complied with and should be enforced . . . is for the trial court to examine the totality of the circumstances and the exact agreement of the parties and ascertain whether a refusal to comply with the agreement would deny [the] defendant due process of law.").

**{8}** In this case, the "exact agreement" was not reduced to writing. We have previously recognized that "[d]ue process may require the enforcement of a verbal [non-prosecution] agreement between [the] defendant and law enforcement personnel." *Seward*, 1986-NMCA-062, ¶ 29. Nevertheless, the lack of a clear written agreement presents a challenge. In order to arrive at an understanding of the terms, the district court appropriately reviewed a recording of the discussion in which the agreement was entered, and also heard the testimony of both of the officers and Defendant.[1] We limit the scope of review accordingly. *See, e.g.*, *Doe*, 1984-NMCA-114, ¶ 20 (limiting the scope of review to the testimony and other evidence of record).

**{9}** The following exchange between Defendant and the officers formed the basis of the non-prosecution agreement. At the outset, the officers offered to "help" Defendant if she would answer questions truthfully about the interstate drug trafficking operation with which she had been involved. Defendant requested a "deal," written "down on paper." One of the agents responded that they were "trying to give [Defendant] a deal" and said, "This is the offer . . . either you are going to work with us now or you can go to jail." (Emphasis omitted). Defendant then asked whether she would "have to go to jail" if she "helped" them. The agent replied, "[H]ow many names can you give me?" In the course of the conversation, Defendant provided the names of roughly ten individuals, as well as information about their roles, locations, phone numbers, vehicles, and activities. Toward the end of the conversation, the officers asked Defendant if she could gather information about future activity, and if she could "set something [up]" with another individual. Defendant responded affirmatively. At that point, the officer indicated, "[W]ell that's what we want, ok? . . . . If I let you go tonight, you're going to promise to stay in contact with me, you're going to deal with me, you're going to work for me, ok?" Defendant again asked if she would have to go to jail "afterwards" if she was completely honest and helped. In response the officer stated, "We require certain things, and I'll explain that to you later on, not right now. But as long as you stay in contact with me

---

[1]The district court also reviewed documents generated after-the-fact, including standard information and history forms, and a report authored by an agent who was not present at the time the non-prosecution agreement was entered. Because these peripheral documents do not memorialize or otherwise reflect the terms of the non-prosecution agreement, they do not materially inform our analysis.

and you follow through, and we work together, we build cases, I can even kick you down the road and you cannot even face these charges." The officer indicated that he and Defendant would "go after people that you say you can go after." Thereafter, additional information about the trafficking operation was requested and supplied. The officers then asked Defendant if she could arrange a meeting, set something up, "make things happen," and "do stuff" with other individuals. Defendant again responded affirmatively. Ultimately, after explaining that Defendant had to stay off drugs and stay in contact, and indicating that they would "start getting to work" and "make some cases," the officers stated that they were going to "send [Defendant] on her way."

{10} The testimony presented in the course of the hearing was largely offered to explain the witness' recollections and subjective understandings of the agreement. The two law enforcement agents confirmed that they had offered Defendant a deal, pursuant to which she was allowed to "walk free" in exchange for providing names and information. However, they explained that while the information Defendant supplied was sufficient for her to avoid going to jail that evening, Defendant was further required to stay off drugs, stay in contact, and help the agents "long term" to "make some cases" against others involved with trafficking. Nevertheless, both of the officers confirmed that they did not ask Defendant to set up or make any specific controlled buys. Finally, Defendant explained that it was her understanding she would not face charges if she provided names and information to law enforcement. Defendant acknowledged that she and the agents discussed working to build cases and helping law enforcement to take down other targets, but she stated that the agreement did not require her to buy drugs. Defendant further indicated that she would have done more to assist law enforcement, but word got out that she had been arrested and her contacts would not have anything to do with her. Nevertheless, Defendant testified that she did everything that was asked of her by remaining in contact and continuing to provide names and information to law enforcement, including the DEA, up until September 2016, when she was charged.

{11} At the conclusion of the hearing, the district court expressed the view that the lack of a written agreement was problematic, and suggested that it was inclined to regard this as a disadvantage to the State. We agree that the State should have placed any agreement in writing. *Cf. State v. Jonathan B.*, 1998-NMSC-003, ¶ 11, 124 N.M. 620, 954 P.2d 52 (observing, in the context of plea agreements, that the purpose of requiring a writing is to ensure, inter alia, that prosecutorial promises are kept and the agreement accurately reflects the bargain struck with the defendant); *State v. Vallejos*, 1997-NMSC-040, ¶ 31, 123 N.M. 739, 945 P.2d 957 (observing that due process embodies principles of fundamental fairness and entitles every individual to be free from arbitrary or oppressive government conduct); *State v. Mares*, 1994-NMSC-123, ¶¶ 13, 17, 119 N.M. 48, 888 P.2d 930 (observing that "the prosecution generally is responsible for drafting agreements" and explaining that "if the [s]tate wishes to make a plea agreement subject to reservations or conditions, such a reservation or condition should be clearly specified in the agreement" (internal quotation marks and citation omitted)); *Doe*, 1984-NMCA-114, ¶ 18 (observing that general equitable principles inform the enforcement of non-prosecution agreements).

**{12}** Ultimately, the district court found, and neither party disputes, that the non-prosecution agreement required Defendant to provide names and information about the drug trafficking operation to law enforcement. The State contends that the evidence established that Defendant was further required to work with law enforcement to "build cases" against other individuals in the future. Statements to this effect were made in the course of Defendant's conversation with law enforcement. However, it was never made clear to Defendant precisely what working together or building cases would entail. As Defendant notes, providing information could suffice. And although the potential to set something up, to "make things happen," to "do stuff," and to "go after people" was discussed, the officers did not specify that the deal they were offering was contingent upon Defendant's successful orchestration or completion of controlled buys or purchases. In essence, the State contends that those requirements should have been inferred. That might have been a permissible inference; however, it was not the only reasonable view of the evidence. *See generally State v. Martinez*, 2018-NMSC-007, ¶ 15, 410 P.3d 186 ("Fact[-]finding frequently involves selecting which inferences to draw. . . that another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence." (internal quotation marks and citations omitted)). After considering the totality of the circumstances, the district court found instead that the agreement, imprecise and unwritten as it was, merely required Defendant to supply names and information when called upon to do so. If the evidence is viewed in the light most favorable to the decision rendered below, and all reasonable inferences are similarly indulged in favor thereof, the district court's determination is adequately supported. *See generally id.* ¶ 3 ("[T]he standard of review . . . requires the appellate court to defer to the district court's findings of fact if supported by substantial evidence and to view the facts in the light most favorable to the prevailing party."). Accordingly, we decline to second-guess the district court's implicit rejection of the State's position.

**{13}** We turn next to the question of compliance. As previously indicated, the evidence clearly established that Defendant provided names and information to law enforcement agents in the course of the interview. Defendant identified at least ten specific individuals who were involved with the trafficking operation, and also provided phone numbers, identified locations, and described roles and activities of these individuals. Moreover, Defendant remained in contact with law enforcement for over a year after her release, and she continued to supply additional names and information to law enforcement until she was charged with trafficking. The district court found that this constituted compliance with her obligations under the terms of the non-prosecution agreement. We perceive no error in the district court's finding. *See generally Larson*, 1988-NMCA-019, ¶ 4 (explaining that compliance with a non-prosecution agreement must be determined by the totality of the circumstances, and that this question is governed by substantial evidence principles).

**{14}** The State contends Defendant's testimony that she would have done more to assist law enforcement if she had not been labeled an informant proves she "was unable to fully cooperate" and she ultimately failed to "fulfill her end of the bargain." However, viewing the evidence in the light most favorable to the decision rendered

below, Defendant's stated willingness to provide additional assistance does not signify that she failed to comply with the agreement; it merely reflects her inability to exceed requirements. Moreover, Defendant testified that she believed she had done all that was asked of her, and fulfilled her obligations. The district court was at liberty to credit her testimony. *See generally State v. Nichols*, 2006-NMCA-017, ¶ 9, 139 N.M. 72, 128 P.3d 500 ("If evidence is in conflict, or credibility is at issue, we accept any interpretation of the evidence that supports the [district] court's findings. As an appellate court, we do not substitute our judgment for that of the fact[-]finder concerning the credibility of witnesses or the weight to be given their testimony." (alteration, internal quotation marks, and citations omitted).

**{15}** In summary, the evidence supports the findings as to the terms of the agreement and Defendant's compliance. Thus, the district court acted well within its discretion in enforcing the agreement and dismissing the charge. *See generally Session*, 1978-NMCA-005, ¶ 11 ("Giving effect to the agreement in these circumstances is the only appropriate relief within the dictates of due process." (internal quotation marks and citation omitted)).

**{16}** In closing, we note the State's reliance upon many of the cases cited above, together with an unpublished opinion, to support its argument that the district court should have found that more was required of Defendant. However, the circumstances presented in this case are distinguishable from the situations addressed in the cited authorities, because there was no specific term or requirement which Defendant failed to satisfy. The vague references to "building cases" and the like, did not clearly communicate that more than the provision of names and information was required of Defendant. Under the totality of the circumstances, the district court was at liberty to resolve the ambiguity as it did.

## CONCLUSION

**{17}** For the foregoing reasons, we affirm.

**{18} IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JENNIFER L. ATTREP, Judge**