Todd **HALL**, Petitioner,

v.

The **STATE** of **Wyoming**, Respondent.

No. 89–212.

Supreme Court of Wyoming.

May 5, 1993.

Rehearing Denied June 15, 1993.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, and Stephen Michael Kissinger, Cheyenne, for petitioner.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., David K. Gruver, Asst. Atty. Gen., and Scott Smith, Special Asst. Atty. Gen., for the State.

Before MACY, C.J., THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. (Retired).

THOMAS, Justice.

In deciding this case, the court must articulate the method for adjudication of a claim of immunity from prosecution. Related questions exist with respect to the validity, nature, and scope of a grant of immunity by the prosecuting attorney. In addition, a question exists as to whether a grant of immunity for the offense of conspiracy to commit murder necessarily extends to the offense of aiding and abetting murder. We hold that, regardless of the authority *vel non* of a prosecuting attorney to grant immunity from prosecution, the grant of such immunity must be recognized when it has been extended and acted upon by the defendant. We further hold that, when a claim of immunity is presented, the trial court shall hold a pretrial hearing to determine whether the case can go to trial. At that hearing, the defendant must assume the burden of presenting a *prima facie* showing of the grant of immunity. The burden is assigned to the State to establish no immunity was extended or, in the alternative, any limitation upon the grant of immunity. The scope of any immunity so granted is a question of fact to be first resolved by the trial judge in determining whether the prosecution may go forward to trial. If the State asserts any grant of immunity has been forfeited because of the breach of its agreement with the defendant, it must prove the breach justifying the loss of immunity. In addition, we hold that, if the trial court permits the case to go to trial, the defendant, if the defense of immunity is pursued at trial, must assume the burden of proving both the fact, and the scope, of the immunity. The State still will be required to prove the breach of the agreement that would justify any forfeiture of the immunity. On the question of whether immunity for conspiracy to commit murder extends to aiding and abetting murder, we hold it does not. The

case is remanded to the district court for further proceedings in accordance with this opinion.

The court granted review in this case pursuant to an Order Granting Petition for Writ of Certiorari and Staying Further Proceedings in the Cause Pending Disposition of the Writ of Certiorari. The parties have briefed and argued the several questions specifically articulated in that order which are:

(1) May a prosecuting attorney in Wyoming grant immunity in the absence of a specific Wyoming statute so empowering him;

(2) What, if any, immunity was granted petitioner under the facts of this case;

(3) The proper procedure for proving the grant of immunity and the forfeiture of any grant;

(4) The burden of proof required of each party in proving the existence or forfeiture of immunity;

(5) Whether the existence of immunity and forfeiture of immunity are to be determined by the trial judge or to be determined by trial jury.

These are the questions we address.

This case was initiated by the filing of a criminal complaint against Todd Hall (Hall) on March 30, 1987. By the complaint, Hall was charged with aiding and abetting first-degree murder and conspiring to commit first-degree murder. Those facts alleged in the complaint significant to our disposition of this case included the allegation that Hall aided and abetted and conspired to commit the murder of Jeff Green. The crime is described in *Hopkinson v. State*, 632 P.2d 79, 95–97 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). In addition to those facts set forth in *Hopkinson*, the State alleged that, between April 18, 1979 and May 17, 1979, a series of meetings occurred between Hap Russell, John Susaeta, and Hall. The complaint went on to allege these individuals claimed an agreement was entered into pursuant to which Susaeta was to receive $5,000 and Hall was to receive $10,000 for their participation in a plan to obtain perjured testimony that

would free Hopkinson from federal prison. It was alleged Hall was to testify Jeff Green (whom Hall did not know) had told Hall that Green was not driving to Arizona to accomplish a bombing on behalf of Hopkinson but, instead, Green was on his way to Salt Lake City to blow up a contractor's equipment as a personal matter having nothing to do with Hopkinson. It was alleged Hap Russell paid Susaeta $4,000, and Hall received an initial $500. Further allegations included the fact Hall had a photograph of Jeff Green in his possession during the time immediately preceding Green's murder and, shortly after the homicide, Hall destroyed the photograph by burning it. The complaint alleged a vehicle owned by Hall matched the description of the vehicle driven by two men who abducted Jeff Green on the day before his death and, Hall had discussed the death of Jeff Green with Susaeta the day after the murder occurred, but before Green's body had been found and the murder became public knowledge.

The affidavit in support of the charges filed against Hall concluded certain factual propositions are inconsistent with any plan to provide Mark Hopkinson with perjured testimony to obtain a new trial in the George Mariscal case, but those facts are consistent with, and demonstrate, Hall's complicity in the plan to have Green murdered. Those facts include:

(a) The payment of $20,000.00 for the obtaining of perjured testimony;

(b) The obtaining and utilization of a photograph of victim Green;

(c) The obtaining of the location of Jeff Green's residence, from which he was later abducted;

(d) Todd Hall's unfavorable reputation;

(e) Todd Hall's receiving the phone call from John Susaeta on May 18, 1979, informing Hall of the death of Jeff Green, two days prior to the discovery of Green's body.

(f) Todd Hall's failure to provide an affidavit to Jeff Brinkerhoff and his failure to follow up on the perjured testimony scheme despite having received a sum of money for his involvement;

(g) Todd Hall's inconsistent Grand Jury statements regarding the operation of his vehicle on or about May 18, 1979, despite evidence to the contrary.

We note Hopkinson was convicted of arranging Green's murder in 1979, and Hap Russell was convicted of crimes arising out of that murder in June of 1990.

Hall filed numerous preliminary motions, **including one seeking dismissal of the charges on the grounds that he had received a grant of immunity from prosecution for any involvement he might have had in the murder of Jeff Green.** In this regard, the record demonstrates Hall was called in for questioning in Salt Lake City, Utah on March 4, 1981. He was accompanied by his attorney, and investigating officers from Utah, Wyoming, and Idaho were present. The county and prosecuting attorney for Uinta County, Wyoming also was present and, before Hall was questioned, the record reveals the following:

WHEREUPON, Mr. Ted Cannon, Salt Lake County Attorney, appeared in the conference room.

MR. HOUSLEY: This is Todd Hall here under investigative subpoena. We've been told what we discussed with you earlier and that is we're prepared to give Mr. Hall transactional immunity under the statute and contained in [77–22–3] for his testimony with these conditions: Number one, that [h]is statement be truthful. Number two, that it be complete. Number three, that it be supported, if requested, by polygraph examination. Number four, that he be prepared to testify in conformity with that statement. Would you read back those conditions?

REPORTER: "One, his statement be truthful. Two, that it be complete.

Three, that he be prepared to testify in accordance with that statement. Four, that he be prepared to support any part of that statement that he may be requested to support by taking a polygraph examination on it. Five, that his statement not disclose that he actually did the killing or was present at the time of the killing.

\* \* \* \* \* \*

MR. HOUSLEY: \* \* \* The immunity we've indicated to Mr. Hansen we would provide to his client was, as I said, transactional immunity for the crimes in Utah of conspiracy to commit murder and conspiracy to obtain perjured testimony.

MR. HANSEN: I understand you're providing the same immunity in Wyoming to him; is that right?

MR. LEHMAN: Yes.

MR. CANNON: Under the circumstances I would be willing to make a grant of immunity such as has been described on the record.[1]

In ruling upon Hall's motion to dismiss, the district court concluded Hall had been granted immunity, but only for conspiracy to commit first-degree murder. With respect to the claim by the State that Hall had forfeited his immunity, the district court ruled it would require the State to prove, by clear and convincing evidence, the nature of the immunity agreement, the manner in which Hall had violated it, and that Hall's violation was material. At that juncture, the posture of the district court proceedings was that the State could proceed to try Hall for aiding and abetting first-degree murder and it also could try him for conspiracy to commit first-degree murder if it satisfied the burden of proof the court had established. Hall filed a

---

**1.** At the time Hall was questioned, Utah Code Ann. 77–22–3 (1980) provided, in pertinent part:

**77–22–3. Immunity granted to witness—Refusal of witness to testify or produce evidence—Powers granted prosecuting attorneys in addition to other powers.**

In any investigation or prosecution of a criminal case, the attorney general and any county attorney shall have the power to grant transactional immunity from prosecution to any person who is called or who is intended to be

called as a witness in behalf of the state whenever the attorney general or county attorney deems that the testimony of such person is necessary to the investigation or prosecution of such a case. No prosecution shall be instituted against the person for any crime disclosed by his testimony which is privileged under this action, provided that should the person testify falsely, nothing herein contained shall be construed to prevent prosecution for perjury.

petition for writ of certiorari with this court in which he challenged the decision of the district court. We granted the petition for writ of certiorari and directed the parties to brief any issues raised by the petition for writ of certiorari, as well as those specified in the order granting the petition for writ of certiorari. The parties limited further briefing to the specific questions articulated in the order.

■ With respect to the authority of a prosecuting attorney to grant immunity, we espouse the rule that a prosecuting attorney, solely by virtue of his office and in the absence of any statutory authorization, has no power to grant immunity to a witness. Annotation, *Prosecutor's Power to Grant Prosecution Witness Immunity from Prosecution,* 4 A.L.R.4th 1221 (1981); 21 AM.JUR.2D *Criminal Law* § 215 (1981); *see Surina v. Buckalew,* 629 P.2d 969 (Alaska 1981). In Wyoming, unlike Alaska, the legislature has identified some circumstances in which grants of immunity are proper, but there is no Wyoming statute authorizing the grant of immunity by a prosecutor.

Wyo.Stat. § 35–7–1043 (1988) permits the attorney general, in his role as commissioner of drugs and substances control, to extend immunity to law enforcement personnel investigating crimes prohibited by the Controlled Substances Act. This grant of immunity is necessary because law enforcement personnel may, and in many circumstances must, violate controlled substances criminal statutes while investigating and solving violations of the Controlled Substances Act. The same statute authorizes the extension of immunity to witnesses whose testimony is necessary to secure convictions under the Controlled Substances Act as long as the district judge in the district in which the prosecution is to take place consents.

A district judge also may grant immunity to a witness, whose testimony may be self-incriminating, in cases in which the establishment of a father/child relationship is sought. Wyo.Stat. § 14–2–108 (Supp.1992). Wyo.Stat. § 14–3–209 (1986) encompasses a general grant of immunity for certain witnesses who furnish evidence of child abuse or neglect. An obligor under a child support order may be granted immunity from criminal prosecution by the court under Wyo.Stat. § 20–4–121 (1987), if the refusal to testify is grounded upon self-incrimination.

In the field of insurance regulation, the insurance commissioner and the attorney general may, in effect, extend immunity to a witness who might be compelled to incriminate himself in certain insurance department hearings. Wyo.Stat. § 26–2–124 (1991). Another provision of the law extends a general grant of criminal immunity to certain companies and individuals who release information concerning fire losses. Wyo.Stat. § 6–3–109 (1988). A form of immunity is also provided to witnesses who are compelled to testify before the Public Service Commission. Wyo.Stat. § 37–2–209 (1977).

■ The closest provision in the Wyoming statutory scheme similar to a general grant of immunity is found in Wyo.Stat. § 7–11–401 (1987), which simply provides that no defendant may be compelled to testify unless a grant of immunity has been made to him. This statute does not appear to encompass authority to grant immunity like that extended to Hall in this case. It would seem an appropriate place to find a general immunity statute would be in connection with grand jury proceedings (*see* Wyo.Stat. § 7–5–206 (1987)) or in the statutes setting out the powers and duties of prosecuting attorneys and district attorneys (*see* Wyo.Stat. § 9–1–804 (1991) and § 18–3–302 (Supp.1992)).[2]

From the foregoing analysis, we hold a prosecuting attorney (district attorney or county attorney) in Wyoming has no authority to grant immunity to a witness. The correct rule is that immunity from criminal prosecution may be created only under the statutory circumstances enumer-

---

**2.** We note, in 1987 and 1989, the legislature did consider bills that would have resulted in statutes giving prosecutors and the attorney general more specific authority to make grants of immunity. Neither bill passed the legislature.

ated previously. Any other authority to grant immunity to a witness should be articulated in specific legislation.

■ Having held the prosecuting attorney had no authority to extend the immunity claimed by Hall, we are confronted by the reality that the prosecuting attorney, in fact, did extend immunity. We are compelled to hold the absence of authority to extend immunity on the part of the prosecuting attorney does not make the agreement unenforceable. Prior cases tend to leave with the reader, including perhaps legal scholars, the impression prosecuting attorneys do, indeed, have authority to enter into grants of immunity such as Hall claims in this case. It seems prosecutors have granted immunity to witnesses many times and, although no issue has been raised specifically in that regard, we have never called into question the authority of the prosecutor to do so. *See Gale v. State,* 792 P.2d 570 (Wyo.1990); *Hennigan v. State,* 746 P.2d 360 (Wyo.1987) (Justice Urbigkit, dissenting); *In re Contempt of Haselhuhn,* 740 P.2d 387 (Wyo.1987); *Hopkinson,* 632 P.2d 79; *McLaughlin v. State,* 626 P.2d 63 (Wyo.1981); *Channel v. State,* 592 P.2d 1145 (Wyo.1979); *Salaz v. State,* 561 P.2d 238 (Wyo.1977); *Jaramillo v. State,* 517 P.2d 490 (Wyo.1974); *Kirk v. State,* 421 P.2d 487 (Wyo.1966). We also note Wyoming has patterned its rules of criminal procedure after the federal rules of criminal procedure. Wyo.R.Crim.P. 16, as it existed during these proceedings, provides the procedure for raising defenses in criminal cases. Fed.R.Crim.P. 12 is the equivalent of Wyo.R.Crim.P. 16 and, in the commentary accompanying the federal rule, we note that one defense covered by that rule is the immunity defense. 1 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CRIMINAL 2D § 193 (1982).

In this case, the record is clear with respect to the meeting at which immunity was extended. The agreement was entered into in the course of an investigative conference, and all the proceedings at the conference were recorded and preserved by a transcript. There can be no question the immunity agreement was entered into voluntarily by Hall and the State. The State does not dispute the existence of an immunity agreement, but its primary contention is that Hall should be held to have forfeited the right to claim any immunity extended because his statement was neither truthful, nor complete, nor incriminating as to any sort of murder charge. We have reviewed the cases summarized at Annotation, *Enforceability of Agreement by Law Enforcement Officials Not to Prosecute If Accused Would Help in Criminal Investigations or Would Become Witness Against Others,* 32 A.L.R.4th 990 (1984). While we conclude the prosecutor had no authority to extend any immunity to Hall, it appears he did so relying in good faith upon his possession of such authority, and we hold Hall, therefore, may seek enforcement of the immunity agreement because doing so is "the only appropriate relief within the dictates of the due process." *State v. Doe,* 704 P.2d 432, 435 (N.M.1984). *See State v. Seward,* 104 N.M. 548, 724 P.2d 756 (1986), *cert. denied,* 104 N.M. 522, 724 P.2d 231 (1986).

■ The extent of the immunity granted becomes an important question. We treat that concern only in the context of transactional immunity, without discussing or comparing use immunity. *See generally* 22 C.J.S. *Criminal Law* §§ 78–80 (1989). This is so because the issue is not posed and, at this juncture, further discussion would provide only an advisory opinion on that matter. The record is devoid of any claim by Hall that any form of immunity other than transactional immunity was bargained for or extended. Furthermore, the procedural posture of this case is consistent only with transactional immunity, since Hall is challenging the right of the State to present him for trial. Use or derivative use immunity does not prevent the State from going to trial. In seeking to convict at trial, use or derivative use immunity does inhibit the State from relying upon information furnished by the accused or obtained as a product of information furnished by him after a grant of immuni-

**1268** 

ty.[3] The issue is availability of evidence, not the right to present the case for trial.

 Immunity for conspiracy to commit first-degree murder is specifically discussed in the record. Utah Statutes Ann. § 77–22–3 authorizes the county attorney to grant transactional immunity from prosecution and goes on to provide that no prosecution shall be instituted against the person for any crime disclosed by his testimony. Another condition of the agreement was that Hall's statement *NOT* disclose he actually was present and participated in the killing of Green. The statement did not disclose any participation by Hall. We are satisfied that any doubts or ambiguities about the extent of a grant of immunity should be decided in favor of a criminal defendant in circumstances such as this. Consequently, we conclude that the grant of immunity would cover the entire transaction for any crime Hall might have disclosed in his testimony. In addition, the prosecutor specifically agreed to immunity for conspiracy to commit first-degree murder.

 Even so, in our judgment, the intent of the parties with respect to the scope of the grant of immunity becomes a question of fact to be resolved initially by the trial court after an appropriate hearing. Certainly, the immunity the defendant can claim must always be at least equivalent to the constitutional privilege from self-incrimination a defendant waives by furnishing statements to law enforcement authorities. *See Steinberger v. District Court in and for Tenth Judicial District*, 198 Colo. 59, 596 P.2d 755 (1979). This, in essence, is what the Utah statute provides.

 We recognize there is no statute to apply here, other than referring to the statute in Utah. In analyzing the case in the same manner as we would if a statute were

in existence, we identify a discernible goal or purpose in common law immunity seemingly identical to that which justifies statutory immunity. The purpose of that immunity, whether statutory or common law, is to facilitate the prosecution of crime, not to grant amnesty. *State v. Carchidi*, 187 Wis. 438, 204 N.W. 473 (1925). It is a significant factor in this case that Hall's immunized statement did not incriminate him in any way with regard to the charges at issue in this case. Apparently, he did not enlarge significantly upon prior statements given to prosecutors freely and without any grant of immunity.

The State contends that, for the reason Hall gave neither a complete nor truthful statement, he has forfeited any immunity he might have received. We agree this contention is at least factually arguable in this case. We, therefore, proceed to set forth our perception of the appropriate procedure to deal with these issues.

 Generally, a motion to dismiss premised on a grant of transactional immunity should be addressed prior to trial in accordance with former Wyo.R.Crim.P. 16. Essentially, the district court endeavored to do that. We are not satisfied, however, that an appropriate hearing was held. As we earlier indicated, the trial court should satisfy itself as to the right of the State to go forward with any prosecution. The trial court has not foreclosed prosecution for conspiracy to commit first-degree murder, but it also has not made a factual determination as to the forfeiture by Hall of the immunity extended with respect to that offense. We remand the case for an appropriate hearing pursuant to Wyo.R.Crim.P. 16 at which Hall must make a *prima facie* case demonstrating the grant of immunity. The State then must establish, by a preponderance of the evidence, no immunity actu-

---

**3.** *Immunity from prosecution.* By state and federal statutes, a witness may be granted immunity from prosecution for his or her testimony (*e.g.* before grand jury). States either adopt the "use" or the "transactional" immunity approach. The federal government replaced the lat[t]er with the former approach in 1970. The distinction between the two is as follows: "Use immunity" prohibits witness'

compelled testimony and its fruits from being used in any manner in connection with criminal prosecution of the witness; on the other hand "transactional immunity" affords immunity to the witness from prosecution for offense to which his compelled testimony relates. *People v. Henson*, Colo.App., 705 P.2d 996. See 18 U.S.C.A. §§ 6001–6005. BLACK'S LAW DICTIONARY 751 (6th ed. 1990).

ally was granted or the effective limitation upon the immunity granted. The State also must assume the burden of demonstrating, by a preponderance of the evidence, the forfeiture of any immunity extended because of Hall's breach of the agreement.

■ After that hearing, if the court permits the trial to go forward as to either of the charges, Hall may *still choose to* assert immunity as a defense at the trial. That issue would be tried as an affirmative defense in the usual course of events, and the completeness and truthfulness of Hall's statements, as well as the inculpatory content of those statements, would be ascertained by the jury. This is consistent with the presentation of any self-incriminating matter which arises in the context of a confession or a grant of immunity. See 4 LESTER B. ORFIELD, CRIMINAL PROCEDURE UNDER THE FEDERAL RULES § 26:511 (1987); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Although, in the case of a confession, the trial court makes a preliminary determination as to the voluntariness of a confession, the defendant always retains the right to pursue the matter before the jury. *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), *on remand sub nom. Crane v. Commonwealth*, 726 S.W.2d 302 (1987), *cert. denied*, 484 U.S. 834, 108 S.Ct. 111, 98 L.Ed.2d 70 (1987); 1 CRIMINAL DEFENSE TECHNIQUES § 3.02[6][h] (1991). The jury would then determine the facts with respect to immunity. A special verdict form incorporating particular questions as to these issues would best serve the interests of justice in such an instance.

At the trial, Hall again would have the burden of establishing a *prima facie* case as to any grant of immunity. There is a written record in this case; however, if one were not available, then the testimony of the defendant and others with knowledge of the facts relating to the claimed grant of immunity, including the investigators or prosecutors present at the meeting at which it is claimed immunity was granted, should be judged under a credibility of witnesses standard. If the defendant pres-

ents a *prima facie* case, then the State must assume the burden of demonstrating beyond a reasonable doubt that no agreement actually was made with respect to immunity; any limitations upon any agreement that was made; or, that the immunity extended has been forfeited. Alternatively, the State could demonstrate beyond a reasonable doubt no inculpatory statements were furnished so that no immunity ever was created.

The district court's approach to this case should have been premised upon the concepts of due process of law rather than simple contract principles. *Doe*, 704 P.2d 432. The burden of proof should be the same as it is in any other instance in which pretrial issues are raised preliminary to trial and then continued as an affirmative defense at the trial. In this regard, the standard with respect to any grant of immunity is that Hall cannot be convicted of any crime disclosed in a statement given in response to any extension of immunity. *United States v. Cooke*, 650 F.Supp. 991 (D.Md.1987); *Carchidi*.

■ We note one final matter. Because our substantive criminal law distinguishes between the crime of conspiracy and any substantive crime (*Garcia v. State*, 774 P.2d 623 (Wyo.1989); see *Duffy v. State*, 730 P.2d 754 (Wyo.1986)), the fact that Hall may have been granted immunity with respect to the offense of conspiracy to commit first-degree murder would not *ipso facto* encompass a grant of immunity for the offense of aiding and abetting first-degree murder. The factual showing at the hearing or trial would have to demonstrate the agreement extended immunity for aiding and abetting also. It would not automatically exist. If Hall furnished information disclosing the offense of aiding and abetting first-degree murder, immunity could be claimed.

Having resolved the questions presented by the Order Granting the Petition for Writ of Certiorari, we remand this case to the district court for further proceedings consistent with this opinion.

URBIGKIT, J. (Retired), files an opinion concurring in part.

CARDINE, J., files an opinion dissenting in part and concurring in part.

URBIGKIT, Justice, Retired, concurring in the decision to remand.

I concur in the decision of the majority to remand for a realistic hearing, which has not heretofore been provided, to determine whether the forfeiture of the accused's right to transactional immunity has occurred by his conduct. I also agree that a pretrial *Denno* hearing should be conducted since, otherwise, the admission of immunity evidence at trial would almost certainly taint the jury decision with irrelevant evidence. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *See also Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

Differing, however, from the comments made in special concurrence and dissent by Justice Cardine, it does not appear to me that the majority intends that an adverse decision in a *Denno* hearing would leave the State a right to take the immunity issue into the substantive guilt evidence later elicited at trial.

Differing from the majority, I have two particular objections to the decision in this case which may be directly related to the peculiar status of this present proceeding involving events which occurred about fourteen years ago.

First, to provide due process, Wyo. Const. art. 1, § 6; U.S. Const. amend. XIV, I would require that another trial judge be assigned for any further proceedings in this case. The present sitting judge for the case—assigned—will not provide the defendant any semblance of justice required from a disinterested judicial decision maker. *Fanning v. Fanning*, 717 P.2d 346 (Wyo.1986). The present trial judge has already made up his mind as the factual decisions in his opinion letters reflect. His attitude regarding the *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983) cases was not only reflected in the hearing which was held, but also in his conduct of the parallel trial, *Russell v. State*, 851 P.2d 1274 (Wyo. 1993), which conviction is also subject to reversal. *See Jones v. State*, 777 P.2d 54 (Wyo.1989), followed by *Jones v. State*, 813 P.2d 629 (Wyo.1991) and *Jones v. State*, 833 P.2d 540 (Wyo.1992). The *Jones* case was finally resolved when the same sitting judge was removed and the case was finally determined by another trial judge, present Wyoming Supreme Court Justice William A. Taylor.

Second, I have not, in any regard, changed my mind about the result-oriented second trial decisions in *Phillips v. State*, 835 P.2d 1062 (Wyo.1992), Urbigkit, C.J., dissenting, and *Harvey v. State*, 835 P.2d 1074 (Wyo.), *cert. denied*, — U.S. —, 113 S.Ct. 661, 121 L.Ed.2d 586 (1992), Urbigkit, C.J., dissenting, in an attempt to differentiate charges of aiding and abetting from conspiracy to commit. What happens in this case is that transactional immunity, generally considered to provide wider protection, has been reconstructed so that it may well provide less protection than will use or derivative use immunity. That result is contrary to well established principles of law. *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661; *State v. Gonzalez*, 825 P.2d 920, 925 (Alaska App.1992).

This most unusual decision is achieved by defining the transactional immunity within the double jeopardy developments of current law which pled out severable crimes within the transactional events. *See Harvey*, 835 P.2d 1074; *Phillips*, 835 P.2d 1062; and *Duffy v. State*, 730 P.2d 754 (Wyo.1986). This decision will provide a unique perspective to American law if the enforced testimony, secured with a promise of immunity for the present accused, leaves him unprotected with a grant of transactional immunity even though he would have been safeguarded if he had been granted the "lesser" protection of use immunity.

The distinction between the two types of immunity is constitutionally significant. *Kastigar*, 406 U.S. 441, 92 S.Ct. 1653, *Gonzalez*, 825 P.2d 920; 2 Paul H. Robinson, *Criminal Law Defenses* § 205(b) and (c) (1984). A number of states, because of the broader protection assumed to be provided,

have held that transactional immunity is required under their state constitutions. *State v. Miyasaki*, 62 Haw. 269, 614 P.2d 915 (1980); *Attorney General v. Colleton*, 387 Mass. 790, 444 N.E.2d 915 (1982); *Wright v. McAdory*, 536 So.2d 897 (Miss. 1988); *State v. Soriano*, 68 Or.App. 642, 684 P.2d 1220, *aff'd* 298 Or. 392, 693 P.2d 26 (1984).

I would remand for a proper hearing before an impartial jurist to determine if forfeiture of the granted transactional immunity did occur.

CARDINE, Justice, dissenting in part, concurring in part.

Todd Hall was charged with aiding and abetting first degree murder and conspiracy to commit first degree murder of Jeff Green. Hall filed a motion to dismiss claiming that he had been granted transactional immunity by the Uinta county attorney for the crimes of conspiracy to commit murder and conspiracy to obtain perjured testimony, the result being that he claimed immunity for all charges arising out of the incident (transaction) resulting in Green's murder. The immunity grant occurred during an investigative interview of Todd Hall conducted by Utah and Wyoming officials. The interview was conducted on the record with Hall's counsel present. The grant of immunity took place as follows:

MR. HOUSLEY: This is Todd Hall here under investigative subpoena. We've told him what we discussed with you earlier and that is we're prepared to give Mr. Hall transactional immunity under the statute and contained in [Utah Statute] 77–22–2 for his testimony with these conditions: Number one, that his statement be truthful. Number two, that it be complete. Number three, that it be supported, if requested, by polygraph examination. Number four, that he be prepared to testify in conformity with that statement. Would you read back those conditions?

REPORTER: "One, his statement be truthful. Two, that it be complete. Three, that he be prepared to testify in accordance with that statement. Four,

that he be prepared .to support any part of that statement that he may be requested to support by taking a polygraph examination on it. Five, that his statement not disclose that he actually did the killing or was present at the time of the killing."

MR. HANSEN [Counsel for Todd Hall]: We had a preliminary discussion on the polygraph. I asked that that not be a condition for the reasons discussed earlier.

\* \* \* \* \* \*

MR. HOUSLEY: \* \* \* The immunity we've indicated to Mr. Hansen we would provide to his client was, as I said, transactional immunity for the crimes in Utah of conspiracy to commit murder and conspiracy to obtain perjured testimony.

MR. HANSEN: I understand you're providing the same immunity in Wyoming to him; is that right?

MR. LEHMAN: Yes.

The district court reviewed the motion to dismiss and the State's response to that motion. The district court issued an extensively researched decision letter. The district court then entered an order which decreed:

1. The Defendant, Todd Hall was granted transactional immunity against prosecution for conspiracy to commit murder and conspiracy to suborn perjury.

2. The Defendant's Motions to Dismiss the charges against him based on the claim that his Sixth Amendment right to counsel and based upon the claim of prosecutorial delay in filing charges against him, and the State's claim that the Defendant has failed to comply with the terms of the grant of immunity and has thereby forfeited his right to immunity are set for an evidentiary hearing \* \* \*.

Later the district judge issued an additional decision letter. In that letter the district judge notes that it is not necessary to have a pretrial hearing on the forfeiture of immunity issue. The decision letter states:

It seems such a needless duplication of effort to me to have two hearings when

one would do because, even if a separate preevidentiary were to be had, at the trial of the case virtually the same evidence as to guilt or innocence would be offered by the prosecution, whether Hall forfeited his immunity or not.

* * * I prefer to have but one trial as suggested in procedure 2 above, the issue of forfeiture to be first decided by the judge during the case in chief, and then submitted, with proper instructions, to the same jury hearing the cases on the charges against both Defendants.

On reviewing the "facts" provided me by the State and the Defendants, I cannot, without more, say whether Hall has forfeited his grant of immunity on the conspiracy charge or not. * * *

\* \* \* \* \* \*

Accordingly, all motions filed by the Defendants are denied[.]

The decision letter goes on to state that a review by the supreme court on a writ of certiorari would be "eminently fitting" since there is virtually no Wyoming law on the questions raised. The district court's final order provided:

THE COURT HEREBY SPECIFICALLY FINDS that Defendant Todd Hall was granted transactional immunity on March 4, 1981, against any and all prosecution for conspiracy to commit murder and conspiracy to obtain perjured testimony. It is the further finding of the Court that the grant of immunity for conspiracy to commit first degree murder given Todd Hall on March 4, 1991, extends to State and Federal Courts.

In reference to the State's claim that Defendant Hall violated and forfeited his grant of transactional immunity because of his failure to make a complete and truthful statement;

IT IS HEREBY THE ORDER OF THE COURT that a ruling will be reserved on the issue of forfeiture of the grant of immunity which shall be decided at trial by the presiding judge during the case in chief, and then submitted with proper instructions to the same jury hearing the case as on the charges against both Defendants. Forfeiture of the grant of immunity at that proceeding shall be shown by a preponderance of the evidence.

IT IS THE FURTHER ORDER OF THE COURT that there is no grant of immunity to Defendant Todd Hall by the State of Wyoming on the issue of aiding and abetting the crime of first degree murder.

The posture of this case after the district court's final order was that Hall would be tried on the aiding and abetting charge and also upon conspiracy to commit first degree murder with the immunity forfeiture question to be decided at the end of the State's case. This court granted Hall's petition for writ of certiorari.

This court in its majority opinion states:

We further hold that, when a claim of immunity is presented, the trial court shall hold a pretrial hearing to determine whether the case can go to trial.

Maj. op. at 1263. It is clear that the pretrial hearing mandated is an evidentiary hearing. My disagreement with the majority's holding is that it makes this pretrial hearing mandatory in every case in which there is a claim of immunity.

Most courts decide transactional immunity issues prior to trial. *United States v. McDaniel*, 449 F.2d 832 (8th Cir.1971), *cert. denied*, 405 U.S. 992, 92 S.Ct. 1264, 31 L.Ed.2d 460 (1972); *Zani v. State*, 701 S.W.2d 249 (Tex.Cr.App.1985); *County v. State*, 812 S.W.2d 303 (Tex.Cr.App.1989); *People v. Backus*, 23 Cal.3d 360, 152 Cal. Rptr. 710, 590 P.2d 837 (1979); *United States v. Dornau*, 356 F.Supp. 1091 (S.D.N.Y.1973). In most cases, the initial determination of the granting of transactional immunity will not require an evidentiary hearing since it is a question of law, and the parties' agreement for immunity will be expressed in the record. *People v. Thompson*, 145 Cal.App.3d 918, 193 Cal. Rptr. 782, 788 (1983).

In this case the trial court ruled that Hall had transactional immunity for the crimes of conspiracy to commit first degree murder and to suborn perjury. The State claimed forfeiture of that immunity. Judge Hamm then, in ruling upon the

State's forfeiture claim, stated, "On reviewing the 'facts' provided me by the State and the Defendants, I cannot, without more, say whether Hall has forfeited his grant of immunity on the conspiracy charge or not." He also stated that in the trial of the aiding and abetting charge, the *same evidence* would be introduced whether Hall had immunity or not—thus, nothing would be gained by holding a pretrial evidentiary hearing. The trial court obviously reasoned that the State must first prove the crime of first degree murder before it can prove that Hall aided and abetted that murder. In this circumstance, nothing is gained by a pretrial evidentiary hearing. I agree with the ruling and would affirm the trial court's decision.

I agree nevertheless that there are cases in which a pretrial evidentiary hearing on immunity questions may be necessary. One such case might be where immunity is claimed for a single charge to be tried. A pretrial evidentiary hearing might avoid a trial. Another case might be where a defendant is charged with two crimes, one for which there is no immunity and the other for which immunity is claimed. In this case, if the evidence upon the charge for which immunity is claimed would not be admissible at trial, then whether immunity was forfeited should be determined before trial at a pretrial evidentiary hearing. If the court decides at the pretrial hearing that defendant retained immunity for the crime charged, I would hold that the State would not be allowed to raise the forfeiture issue again at trial; and if the court concluded that immunity was forfeited, the defendant may have that question presented to the jury for decision upon proper instructions.

Allowing the State to again raise the issue of forfeiture after an unfavorable pretrial decision of the trial court would prejudice the jury against the defendant on the remaining charge and also undermine the advantage the defendant sought to gain via the immunity agreement. Permitting the State to raise forfeiture, would permit the State to try persons for offenses for which they were granted immunity. Therefore, I disagree also with that portion of the majority opinion which allows the State, after an unfavorable decision at the evidentiary hearing, to again present that issue at trial.

The majority states:

At the trial, * * * [i]f the defendant presents a *prima facie* case, then the State must assume the burden of demonstrating beyond a reasonable doubt that no agreement actually was made with respect to immunity; any limitations upon any agreement that was made; or, that the immunity extended has been forfeited.

Maj. op. at 1269. I would hold that the State should be permitted to present evidence upon the forfeiture claim at trial in front of the jury only if the defendant, after an unfavorable decision, asserts immunity as a defense at trial.

Under the rule I propose, three scenarios can take place. The district court can decide upon the record without a pretrial evidentiary hearing: (a) that immunity was granted and the case is over on that charge; (b) that no immunity was granted and the case proceeds to trial; or (c) that a critical question of fact (or taint in the case of use immunity) exists that the court is not able to determine from the record, affidavits or preliminary hearing testimony. In that case, the district court should hold a pretrial evidentiary hearing unless the same evidence will in all events be presented at trial upon other charges. At the conclusion of the pretrial evidentiary hearing, the court could find that immunity was not forfeited, and the charge would be dismissed. In the alternative, the court could find that the immunity was forfeited, and the case would proceed to trial. At trial the defendant could raise immunity as a defense, if he chooses, with the jury to ultimately determine the question upon proper instructions.

This procedure is fair to all parties. It gives the State an opportunity to prove its claim of forfeiture. It also avoids the defendant standing trial upon a charge for which he has been granted immunity by the State simply continuing to claim forfei-

ture. The result of the majority's procedure would be that the State, by claiming forfeiture in every case, may present evidence otherwise inadmissible if defendant had been granted immunity. Such requirement is not appropriate. It results because the majority relies upon a *Denno* analogy which has no application to this case.

*Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), involved voluntariness of a confession. Thus, if the defendant claimed that his confession was involuntary, the court must hold a pretrial *Denno* hearing. *Denno,* 378 U.S. at 391, 84 S.Ct. at 1788–89. If the confession is involuntary, it is suppressed. And even under *Denno,* the State cannot then utilize the confession at trial and ask that the jury find that the judge's ruling to suppress was incorrect. *Denno,* 378 U.S. at 394, 84 S.Ct. at 1790. The majority's procedure allows the State to do just that where immunity is claimed. Under the majority's opinion the State can still proceed to trial on the charge, under the argument of forfeiture, even though the judge has ruled that the defendant had transactional immunity.

On the issue of whether immunity for conspiracy would cover the aiding and abetting charge, the district court ruled:

> IT IS THE FURTHER ORDER OF THE COURT that there is no grant of immunity to Defendant Todd Hall by the State of Wyoming on the issue of aiding and abetting the crime of first degree murder.

I would affirm this decision of the district court.

I, therefore, dissent to the portion of the opinion that requires a *Denno*-type hearing in every case and which allows the State to raise the forfeiture issue at trial even after the trial court has decided that issue against the State in a pretrial hearing. I concur in the portion of the opinion which requires a pretrial evidentiary hearing on the forfeiture where evidence upon the immunity claim charge would be excluded at trial if immunity existed.

I would affirm the decision of the trial court.