Alvin G. RUSSELL, III, a.k.a. Hap Russell, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 90–225.

Supreme Court of Wyoming.

May 5, 1993.

Michael K. Shoumaker, Sheridan, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, and D. Michael Pauling, Sr. Asst. Attys.

Gen. (research assistance by: Bryan A. Skoric and Eric R. Bellas, Prosecution Assistance Program, University of Wyoming, College of Law), for appellee.

Before MACY, C.J., and THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. (Retired).

THOMAS, Justice.

The most difficult issue in this case is whether a grant of immunity was, or was not, extended to Alvin G. (Hap) Russell, III (Russell). Almost equally troublesome is the jury selection process disclosed by the record, particularly relating to the examination of potential jurors for bias. As disclosed by the numerous issues raised in Russell's brief, quoted below, a number of questions are asserted that can be summarized as pre-arrest delay; violation of the constitutional right of confrontation; prosecutorial misconduct; ineffective assistance of counsel; and error in the admission of evidence. We hold the issue of immunity was not correctly addressed in a procedural context. The case must be reversed and remanded for a pre-trial hearing on the question of immunity and for a new trial if the result of the hearing should be that Russell was not granted immunity. We find no reversible error with respect to any of the other claims of error asserted by Russell.

In his Brief of Appellant, Russell sets forth the following issues:

1. Does a Wyoming prosecutor have the power to grant a witness immunity pursuant to the Wyoming Constitution and Statutes?

2. Does a Wyoming prosecutor have the power to grant a witness immunity pursuant to common law?

3. Was Alvin Russell granted immunity in 1979 in exchange for his testimony?

4. If the prosecutor lacked authority to grant immunity, is it misconduct to offer immunity as an inducement for Russell's testimony?

5. Was Russell's waiver of his right to remain silent voluntary because of inducement by the prosecutors?

6. Should Judge Ranck have assumed that Russell's waiver of his Fifth Amendment rights was voluntary?

7. Should the Appellant's conviction be reversed due to unconstitutional prearrest delay?

8. Did the testimony of Harold James Taylor violate Rule 804 and the Appellant's right to confrontation?

9. Was it misconduct for the prosecutor to represent both the state and federal governments?

10. Was it prosecutorial misconduct to misrepresent the immunity agreements?

11. Was it prosecutorial misconduct to violate the agreements of a prior prosecutor?

12. Was it prosecutorial misconduct to state a belief in the defendant's guilt during voir dire?

13. Was it prosecutorial misconduct to elicit an opinion concerning the defendant's guilt from an investigating officer?

14. Was Sanford Jorgenson ineffective counsel in failing to adequately assure that Russell was granted complete immunity before testifying?

15. Was Hershel Bullen ineffective by allowing Russell to testify at the Hopkinson trial without counsel?

16. Was Ron Yengich ineffective counsel by his failure to move for a change of venue?

17. Was Ron Yengich ineffective by his failure to call witnesses on the issue of immunity?

18. Was Ron Yengich ineffective for his failure to object to the testimony and court records of Hopkinson's conviction?

19. Was Ron Yengich ineffective for failure to investigate and call significant defense witnesses?

20. Did Judge Hamm force the defense to use peremptory challenges to remove clearly biased witnesses [jurors]?

21. Did Judge Hamm allow irrelevant testimony and prejudicial hearsay as "background" in violation of the Wyoming Rules of Evidence?

The State of Wyoming, as appellee, articulates the issues in this way:

I. What effect should be given to the alleged immunity agreements with Appellant?

II. Was a legitimate investigative delay of Appellant's prosecution harmless?

III. Were the statements of Harold James Taylor properly admitted?

IV. Was Appellant's case free from prosecutorial misconduct?

V. Did Appellant's various attorneys effectively represent him?

VI. Did voir dire provide Appellant with a fair and impartial jury?

VI. Was it unfair to properly admit at Appellant's trial background information relating to Mark Hopkinson?

On March 30, 1987, the State of Wyoming filed a criminal complaint charging Russell with aiding and abetting first-degree murder and conspiring to commit first-degree murder. These charges related to the torture and murder of Jeff Green, described in *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). The complaint traced certain of Russell's activities from mid-April, 1979 to just after Green's murder in May of 1979. It outlined numerous telephone conversations and one personal visit between Russell and Hopkinson, while Hopkinson was incarcerated at Lompoc Federal Corrections Institute; exchanges of money; meetings between Russell and various individuals implicated in Green's murder; and the acquisition by Russell of a photograph of Green. The State alleged the outlined events led to the ineluctable conclusion that Russell aided and abetted and conspired with Hopkinson and others to procure the death of Green. The theory of the State was contrary to Russell's explanation that he only agreed to obtain perjured testimony to discredit Green's testimony against Hopkinson in that he had no knowledge of a plan to murder Green.

After probable cause was determined and Russell was held for trial in the district court, he filed numerous preliminary motions. Those included a motion seeking dismissal of the charges on the ground that he had been granted immunity from prosecution for his involvement surrounding Green's death. The district court denied all of Russell's motions, without holding any evidentiary hearing on the question of immunity, and allowed the trial to go forward. Russell's trial commenced on June 12, 1990 and, on June 19, 1990, the jury returned a verdict finding him guilty of aiding and abetting first-degree murder and guilty of conspiracy to commit first-degree murder. Russell appeals from the judgment and sentence, pursuant to which he was sentenced to life imprisonment for aiding and abetting first-degree murder and a consecutive term of not less than eight, nor more than ten, years for conspiracy to commit first-degree murder.

■ The first six issues asserted by Russell focus on whether he was granted immunity from prosecution and the propriety of any such grant of immunity. We have recently held that a prosecuting attorney, solely by virtue of his office and in the absence of any statutory authorization, has no power to grant immunity to a witness. *Hall v. State*, 851 P.2d 1262 (Wyo.1993).[1] We went on to hold in Hall, however, that the absence of authority to extend immunity on the part of the prosecuting attorney does not result in the agreement being unenforceable. A defendant may seek enforcement of the immunity agreement because doing so is "the only appropriate relief within the dictates of due process." *Hall* (citing *State v. Doe*, 103 N.M. 178, 704 P.2d 432, 435 (1984)).

■ We outlined what we perceived to be appropriate procedural requirements for determining whether a defendant has received immunity from prosecution in the *Hall* opinion. We held a motion to dismiss premised on a grant of immunity must be addressed in a hearing prior to trial, in

---

1. In *Hall v. State*, 851 P.2d 1262 (Wyo.1993), we outlined the situations in which the legislature has authorized grants of immunity, but there is no statute in Wyoming that authorizes the grant of immunity by a prosecutor. See, e.g., Wyo. Stat. §§ 35-7-1043 (1988), 14-2-108 (Supp. 1992), 14-3-209 (1986), 20-4-121 (1987), 26-2-124 (1991), 6-3-109 (1988), 37-2-209 (1977), 7-11-401 (1987), 7-5-206 (1987), 9-1-804 (1991), 18-3-302 (Supp.1992).

accordance with former Wyo.R.Crim.P. 16. At the hearing, the defendant must initially make a *prima facie* case demonstrating the grant of immunity. If the defendant succeeds in meeting that burden, the State then must establish, by a preponderance of the evidence, that no immunity actually was granted, or what effective limitations upon the grant of immunity were extant or, alternatively, that the defendant forfeited any immunity extended because of the defendant's breach of the agreement.

█ Following such a hearing, if the court permits the trial to go forward, the defendant still may choose to assert immunity as a defense at trial. The issue of immunity then would be tried as an affirmative defense and decided by the jury, using a special verdict form. In this instance, because the district court denied Russell's motion to dismiss on the ground of immunity without affording him the procedural protections described in *Hall*, we reverse the conviction and remand the case so that the appropriate procedural protections can be afforded.

█ Of the remaining fifteen errors asserted by Russell, the jury selection process employed by the district court is indeed distressing. The casual dismissal of possibilities of prejudice and bias expressed by potential jurors culminated in service by a juror who was the husband of a witness for the State. Russell did not object to the husband remaining on the jury at the trial, and he, therefore, must rely upon the doctrine of plain error. *Gresham v. State,* 708 P.2d 49 (Wyo.1985). The plain error doctrine should be applied sparingly and invoked only where the error seriously affects the fairness or integrity of judicial proceedings. *Cutbirth v. State,* 663 P.2d 888 (Wyo.1983); *Gresham.* The burden of establishing the plain error is assigned to Russell, as appellant. *Gresham.*

For a number of years, we have invoked a three-part test to determine whether plain error has been established:

> In order for an alleged error to fall within this doctrine, specific minimum criteria must be met. It must be clear from the record, without resort to specu-

lation or equivocal reference, exactly what occurred at trial. The proponent of the doctrine must demonstrate the existence of a clear and unequivocal rule of law; and the particular facts of the case must clearly and obviously, not just arguably, transgress that rule. Finally, once these criteria have been met, it must be shown that some substantial right of the accused has been adversely affected. These criteria apply even when constitutional error is alleged; and unless each one of them is satisfied, any claim for review under the plain-error doctrine must fail. *Hampton v. State,* 558 P.2d 504, 507–508 [Wyo.1977].

*Gresham,* 708 P.2d at 55; (citing *Daellenbach v. State,* 562 P.2d 679, 681 (Wyo. 1977)).

█ The clear and unequivocal law at issue is that rule imposing an affirmative duty on the trial court to ensure a jury of competent, fair, and impartial persons is impaneled. *Summers v. State,* 725 P.2d 1033 (Wyo.1986), *confirmed on reh'g,* 731 P.2d 558 (1987). In arriving at a determination whether this rule was violated by the trial court when it permitted the husband to remain on the jury, we acknowledge the conduct of voir dire and the impaneling of a jury are functions committed to the discretion of the trial court. *Gresham.* We do not reverse the exercise of discretion by a trial court absent clear abuse. *Gresham; Summers.* The ultimate issue to be resolved in making a determination of whether there has occurred an abuse of discretion is whether the trial court reasonably could conclude as it did.

█ The record in this case depicts clearly what occurred in connection with jury selection. During voir dire, the husband admitted he was married to a witness for the State in the case, and he stated they had, in fact, discussed the case. The record colloquies with the juror are:

[COUNTY ATTORNEY]: Okay. Mr. Butters, I'm going to pick you out first. I'm going to pick on you for a second. I'm going to go through this with the

rest of the jury in a bit but Mr. Butters, are you related to anyone that may be a witness in this particular case?

MR. BUTTERS: Yes, I am.

[COUNTY ATTORNEY]: Are you, in fact, married to a person that may be a witness in this particular case?

MR. BUTTERS: Yes.

[COUNTY ATTORNEY]: Have you talked about this particular case with your spouse?

MR. BUTTERS: Yes.

[COUNTY ATTORNEY]: Have you as the result of your conversations formed an opinion as to the guilt or innocence of the guilt of this particular Defendant or his co-conspirators?

\* \* \* \* \* \*

MR. BUTTERS: No, I have not.

[COUNTY ATTORNEY]: You have not formed an opinion?

MR. BUTTERS: No.

\* \* \* \* \* \*

[COUNTY ATTORNEY]: \* \* \* How many of you before you came into this courtroom this morning knew what this case was about?

One two, three, four, five, six—You must have knew this trial was going on this morning, Mr. Butters?

MR. BUTTERS: I knew it was starting but I didn't know I was going to be here for this.

\* \* \* \* \* \*

[COUNTY ATTORNEY]: \* \* \* Anyone read a book by an individual known as— an individual. A lawyer up in Jackson by the name of Gerry Spence? The book is called *Gunning For Justice?*

\* \* \* \* \* \*

MR. BUTTERS: I've read part of it.

[COUNTY ATTORNEY]: The parts that center on the Hopkinson case?

MR. BUTTERS: Yes.

\* \* \* \* \* \*.

[COUNTY ATTORNEY]: \* \* \* Mr. Butters, I've got to the ask you.

MR. BUTTERS: Ask.

[County Attorney]: If your wife were to testify, would you give her testimony more or less credence than anyone else's?

MR. BUTTERS: No.

[COUNTY ATTORNEY]: Judge her the same as you would any other witness?

MR. BUTTERS: Yeah.

[COUNTY ATTORNEY]: Would you feel that if you were to—Now, she's going to be a State's witness.

MR. BUTTERS: Right.

[COUNTY ATTORNEY]: If you were to vote the Defendant was not guilty of the crimes charged, do you think that that might potentially cause a little marital discord or would you have to explain yourself to your wife?

MR. BUTTERS: No, not really.

[COUNTY ATTORNEY]: Okay. Fair enough.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: \* \* \* The Defendant's theory of the case and the Defense theory of the case is that Mark Hopkinson and Hap Russell did not conspire to kill Jeff Green but that Hap Russell concededly conspired to suborn perjury for Mark Hopkinson. Have any of you heard that as a theory before? Okay. Because it's been mentioned in the papers.

Mr. Butters, you have?

MR. BUTTERS: (Mr. Butters nodded.)

\* \* \* \* \* \*

[DEFENSE COUNSEL]: Mr. Butters, just one question. Your wife is a potential witness in this case.

MR. BUTTERS: Right.

[DEFENSE COUNSEL]: And, again, I understand that you're placed in the hot seat because of that, okay? But the— I'm not going to make the seat too hot. You indicated that—and I want to—Let me get the phraseology right.

You said that you would not give your wife's testimony any more credibility than any other witness; am I correct in that?

MR. BUTTERS: Correct.

[DEFENSE COUNSEL]: All right. Have you and your wife discussed that facet of your potential service as a juror?

MR. BUTTERS: No.

[DEFENSE COUNSEL]: If I said that about my wife, my wife would be mad at me.

MR. BUTTERS: Why?

[DEFENSE COUNSEL]: Because I think she thinks I believe in her more than anyone else. And I'm not being facetious when I say that. Would you have any problem going back to your wife after rendering a verdict and saying, "You know, I just didn't believe the State's case and you—your testimony didn't add sufficient amount of credibility to it for me to render a conviction in this case." Would you have any problem in doing that?

MR. BUTTERS: No, I wouldn't.

Mr. Butters was not challenged for cause[2] nor was any peremptory challenge exercised as to him. Despite our collegiate amazement that the husband of a material witness for the State was permitted to serve as a juror, we can discern no reversible error. By his failure to challenge the juror and acceptance of the panel at trial, Russell has waived any objection to the service of this juror. *Frias v. State,* 722 P.2d 135 (Wyo.1986); *Lopez v. State,* 544 P.2d 855 (Wyo.1976). *See Jahnke v. State,* 682 P.2d 991 (Wyo.1984).

■ With respect to the general claim of error that the trial judge forced the defense to use peremptory challenges to remove clearly biased jurors and inhibited

other jurors, the record references in Russell's brief disclose only challenges by the county attorney. Russell did not challenge any juror for cause, and the same rule is applicable as the one relating to Mr. Butters. In addition, there is no showing of the requisite prejudice by demonstration he was forced to exercise a preemptory challenge against an unqualified juror. *Parks v. State,* 600 P.2d 1053 (Wyo.1979). Our examination of the record with respect to jury selection discloses that the participation of, and rulings by, the trial judge were less imperative and far less troublesome than those presented in other cases in which we have affirmed convictions when the same claim of error was asserted. *See Summers; Gresham.*

■ We address briefly the remainder of Russell's issues, which we hold do not constitute reversible error. In his seventh issue, Russell contends his conviction should be reversed and the case dismissed due to unconstitutional pre-arrest delay. We established the test for unconstitutional pre-arrest delay in *Story v. State,* 721 P.2d 1020 (Wyo.1986), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986). Russell must demonstrate the pre-arrest delay resulted in substantial prejudice to his right to a fair trial, and the delay was an intentional device to gain some tactical advantage over him. *Story.* In order to establish substantial prejudice, Russell is required to show with reasonable probability that, but for the delay, the result of his trial would be different.

2. A relationship between a juror and a witness is not one of the grounds for challenge for cause set forth in Wyo.Stat. § 1–11–203 (1988), which provides:

(a) Challenges for cause may be taken on one (1) or more of the following grounds:

(i) A lack of any of the qualifications prescribed by statute which render a person competent as a juror;

(ii) Relationship by consanguinity or affinity within the third degree to either party;

(iii) Standing in the relation of debtor or creditor, guardian or ward, master or servant, or principal or agent to either party, or being a partner united in business with either party, or being security on any bond or obligation for either party;

(iv) Having served as a juror or a witness in a previous trial between the same parties for the same cause of action, or being then a witness therein;

(v) Interest on the part of the juror in the event or question involved in the action, but not an interest of the juror as a member or citizen of a municipal corporation;

(vi) Having formed or expressed an unqualified opinion or belief as to the merits or the main question of the action. The reading of newspaper accounts of the subject matter before the court shall not disqualify the juror either for bias or opinion;

(vii) The existence of a state of mind in the juror evincing enmity or bias for either party.

Green was killed in May of 1979, and the State filed its criminal complaint against Russell in 1987. Russell has articulated several fairly persuasive ways in which the pre-arrest delay may have resulted in prejudice to him. He has failed, however, to establish the pre-arrest delay was the product of an intentional bad faith pursuit of a tactical advantage by the State. Russell asserts, in this regard, that the State delayed his prosecution until the election of a prosecutor who would not feel obligated to honor the immunity agreement with him. This assertion is entirely speculative and, without some evidence to support this allegation, we cannot attribute such a motivation to the State's delay in charging Russell. We do not find error in this case arising out of pre-arrest delay.

We also are unpersuaded by Russell's claim of ineffective assistance of counsel as outlined in his fourteenth through nineteenth issues. Our law with respect to ineffective assistance of counsel is well established and, since we have concluded Russell is entitled to a new trial on other grounds, we do not address this issue in detail. We do, of our own motion, note that, if a contention of ineffective assistance of counsel had been asserted with respect to Mr. Butters' service as a juror, it would be difficult to discern any prejudice. His wife's testimony was not impeached; was straightforward with respect to her knowledge of material facts; and was, in connection with other circumstantial evidence, consistent with the verdict. Had Mr. Butters not honored his oath as a juror, it is not apparent to us that it would have made any difference with respect to the verdict.

In his issues numbered nine through thirteen, Russell asserts questions of prosecutorial misconduct. We find no reversible error with respect to issues twelve and thirteen regarding prosecutorial misconduct in stating a belief in Russell's guilt and eliciting an opinion concerning his guilt. We assume, however, no such statements will be repeated at any new trial of Russell. We do not discuss Russell's other questions of prosecutorial misconduct, most of which have been resolved by our discussion of, and ruling on, the immunity issue.

Finally, we consider Russell's claims of error regarding the introduction of background testimony and certain hearsay testimony. Determinations with respect to admissibility of evidence also are vested within the sound discretion of the trial court, and we do not disturb those rulings on appeal absent a clear abuse of discretion. *Jennings v. State*, 806 P.2d 1299 (Wyo. 1991). Our review of this record results in a conclusion that the decision of the trial court to permit the introduction of the hearsay testimony, and its further decision to permit the introduction of certain background evidence, were not outside the bounds of reason. We find no abuse of discretion and no reversible error with respect to the admission of evidence.

Because of the failure to follow the appropriate procedure with respect to a determination as to immunity, we reverse the judgment and sentence in this case. It is remanded to the trial court for a hearing with respect to the grant of immunity, and for a new trial if immunity is found not to be available to Russell.

URBIGKIT, J. (Retired), filed a specially concurring and dissenting opinion.

CARDINE, J., filed a dissenting opinion in which MACY, C.J., joined.

URBIGKIT, Justice, Retired, specially concurring and dissenting.

I concur in the decision of this court to remand the case for failure of the trial court "to follow the appropriate procedure with respect to a determination as to immunity * * *." However, I would require reassignment of the case to a fair and disinterested trial judge for the reasons stated in my concurring opinion in *Hall v. State*, 851 P.2d 1262 (Wyo.1993).

Even though the conviction will be reversed and a new trial may be required, I cannot, under any circumstances, accept the justification provided by this court for retention of the husband of a witness on the jury. Particularly in light of the prose-

cution effort directed toward this and other cases related to Mark Hopkinson, *Hopkinson v. State,* 632 P.2d 79 (Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983), attention to the principle of basic fairness is required.

I am distressed with the unwillingness of the Wyoming Supreme Court to require a fair and impartial jury as guaranteed by Wyo. Const. art. 1, § 6; Wyo. Const. art. 1, § 9; and the Sixth Amendment of the United States Constitution as well as the Fourteenth Amendment of the United States Constitution. Acceptance of the obviously partisan and far from disinterested jury in *Amin v. State,* 811 P.2d 255 (Wyo.1991) was constitutionally implausible. We now move on to a status which defines the ultimate egregious error. In this circumstance, defense counsel and the accused might equally, or preferably, be served by having a member of the staff of the prosecutor sit on the criminal trial jury.

" 'The securing and preservation of an impartial jury goes to the very essence of a fair trial. See *Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, reh. den., 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118 (1965). It has long been recognized under the federal constitution that a defendant is entitled to a jury that is free of outside influences and will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself. *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879, 881 (1907) (Holmes, J.).' "

*Amin,* 811 P.2d at 272, Urbigkit, C.J., dissenting (quoting *State v. Marshall,* 123 N.J. 1, 586 A.2d 85, 127 (1991) and *State v. Williams,* 93 N.J. 39, 60–61, 459 A.2d 641 (1983)).

I fear, with this decision, that the court leaves no limits to the degree of partisanship that is acceptable for an individual to be retained as a member of a Wyoming criminal trial jury.

CARDINE, Justice, dissenting, with whom MACY, C.J., joins.

The majority opinion reverses this case for the sole reason that no hearing was held to determine whether Russell had immunity from prosecution for murder. I concur in all of the opinion except the reversal on the immunity question because of failure to hold a *Denno*-type hearing. A hearing is not required where the nature and extent of immunity granted is clearly stated upon the record. On the record Russell was not granted immunity for prosecution of murder.

I would affirm the conviction.

I believe the requirement for a *Denno*-type hearing we adopted in *Hall v. State,* 851 P.2d 1262 (Wyo.1993), should be limited to those situations in which the immunity granted cannot be clearly discerned from the record or those cases in which it is claimed that immunity was lost because of a breach of the immunity agreement. Such breach might be a claim of failure to testify fully and truthfully.

*Russell v. State* is not a case in which a hearing should be required. The immunity agreement was put on record and, in my judgment, is clear. In a letter to Mr. Russell's attorney, Edward P. Moriarity, Special Prosecutor, Uinta County, Wyoming, wrote:

Conditional upon your client appearing before a Federal Grand Jury and testifying fully and honestly about certain activities that he has been involved in related to one Mark Allen Hopkinson and conditional upon your client's full, complete, honest testimony and cooperation in later state and federal proceedings involving the same subject matter, we as special prosecutors, will agree not to charge Mr. Russell in state court with **subordination of perjury or conspiracy to suborn perjury.** [emphasis added]

The transcript from Mark Hopkinson's trial for the murder of Jeff Green further clarifies the extent of the immunity granted to Mr. Russell:

MR. SPENCE: [W]e ask the Court in the furtherance of justice to grant immu-

nity, not use immunity but plain old transactional immunity but limited to the issue of perjury. That means immunity to any matters in which this witness has been involved directly or indirectly in obtaining suborning, purchasing, arranging for perjury or conspiracy to obtain perjury or any other matters relative to perjury, from a to z, under perjury. *Nothing with respect to murder; nothing with respect to any other crimes.*

That's our motion.

THE COURT: The motion will be granted based upon what's been said. It's transactional as opposed to use, and further based upon this witness' oath with respect to the testimony he is about to give.

Okay, Mr. Russell?

MR. RUSSELL: Okay. [emphasis added]

The immunity granted was clearly from prosecution for an attempt to obtain perjured testimony, and Special Prosecutor Spence specifically stated on the record that the immunity granted did not include immunity from prosecution for murder. The State does not claim that Russell lost immunity because he failed to tell the truth. Thus, there is no need nor logical reason for a *Denno* hearing or any other type hearing. The State simply claims that, upon the record, Russell never received immunity from prosecution for murder. I agree. No further hearing is needed, nor would it add anything. I would, therefore, affirm.